**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X     **Docket No:**

JOHANNA HICKEY,

                *Plaintiff,*

                                    **COMPLAINT**

        - against-

BETTER   CARTING   SERVICE,   INC.,   and
CHRISTINE CESTONE, *In Her Individual and*
*Official Capacities*,

                                  ***PLAINTIFF DEMANDS***
                                  ***A TRIAL BY JURY***

                *Defendants.*


------------------------------------------------------------X

      PLAINTIFF   JOHANNA   HICKEY   by   her   attorneys,   PHILLIPS   &   ASSOCIATES,
Attorneys at Law, PLLC, hereby complains of DEFENDANTS, and alleges as follows:

## NATURE OF THE CASE

1.      PLAINTIFF complains pursuant to the <u>Pregnancy Discrimination Act</u> of <u>Title VII of the</u> <u>Civil Rights Act of 1964</u>, as codified, <u>42 U.S.C.</u> §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); the <u>New</u> <u>York State Human Rights Law</u>, <u>New York State Executive Law</u> §§ 296, *et seq.* ("NYSHRL");, and seeks damages to redress the injuries PLAINTIFF has suffered as a result of being **discriminated against and retaliated against** by her employer solely due to her **<u>sex/gender, pregnancy</u>** and **in retaliation for** engaging in protected activity.

2.      At all times relevant, PLAINTIFF was employed as a "Customer Support Specialist" at DEFENDANT, BETTER CARTING SERVICE, INC. ("BCS"), located in White Plains, New York.

3.      DEFENDANT CHRISTINE CESTONE is a manager with DEFENDANT BCS and had the power to affect the terms and conditions of PLAINTIFF'S employment.

4.     DEFENDANTS eventually terminated PLAINTIFF'S employment solely due to her pregnancy and related medical issues.

5.     PLAINTIFF'S pregnancy was "high risk" and PLAINTIFF sought reasonable accommodations as a result.

6.     PLAINTIFF sent several emails regarding her pregnancy, medical visits, and need for maternity leave to her Manager/Supervisor, DEFENDANT CHRISTINE CESTONE but did not get any replies.

7.     PLAINTIFF had to go to DEFENDANT CHRISTINE CESTONE'S office to confirm receipt of her accommodation emails and she was told with a cold shrug and annoyed expression, "***okay***."

8.     DEFENDANTS propagated a general culture where everyone would be scared to take any kind of time off due to fear of discrimination and retaliation.

9.     PLAINTIFF'S pregnancy-caused absence on or around January 2, 2022, caused DEFENDANTS to be upset and when she had to extend it for one day on account of looking for an alternative babysitter, she was told that she was being terminated.

10.    DEFENDANT CHRISTINE CESTONE told PLAINTIFF that she was being let go because of the time she took off, and when PLAINTIFF'S husband listening called it out as "***retaliation***," DEFENDANT CHRISTINE CESTONE hung up the call.

11.    After an hour ignoring PLAINTIFF'S follow up calls, DEFENDANTS sent PLAINTIFF a termination letter stating that she was being let go due to "***financial reasons***." This excuse was pretextual.

12.    To add absolute insult to injury, DEFENDANTS retaliated against PLAINTIFF and terminated her employment at the most callous and worst possible time – right after PLAINTIFF gave birth, had a newborn to care for, and needed her income, health insurance

and job stability for her well-being and to support her newborn baby.

13.     As a result of the above-alleged acts of DEFENDANTS, which will be outlined in detail below, PLAINTIFF asserts that she was discriminated against and retaliated against based on her sex/gender and pregnancy.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

14.     Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and 1343.

15.     The Court has supplemental jurisdiction over the claims that PLAINTIFF has brought under State law pursuant to 28 U.S.C. § 1367.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more DEFENDANTS reside within the Southern District of New York, or the acts complained of occurred therein.

17.     By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on _____April 1_____, 2022; (b) receiving Notices of Right to Sue from the EEOC dated _____March 16_____, 2022 ; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, PLAINTIFF has satisfied all of the procedural prerequisites for the commencement of the instant action.

18.     A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

19.     A copy of the transmittal letter to the NYCCHR, *et ano.*, is annexed hereto as Exhibit B.

**PARTIES**

20.     **PLAINTIFF JOHANNA HICKEY (hereinafter "PLAINTIFF")** is a 31-year-old female, who resides in New Fairfield, Connecticut. At all times relevant, PLAINTIFF was employed at DEFENDANT BCS, as a "Customer Support Specialist."

21.     **DEFENDANT BETTER CARTING SERVICE, INC., (hereinafter "BCS")** is a domestic business corporation in Westchester County, New York that exists under the laws of the State of New York. Upon information and belief, DEFENDANT BCS engages in trash removal, demolition removal, hauling/carting and construction debris removal.

22.     Upon information and belief, **DEFENDANT BCS** owns and/or operates a location at 32 Russell Street, White Plains, New York 10606, where the discriminatory conduct took place.

23.     DEFENDANT BCS employs over 15 employees.

24.     Upon information and belief, **DEFENDANT CHRISTINE CESTONE (hereinafter "DEFENDANT CESTONE")** is/was a manager at **DEFENDANT BCS**. At all times, **DEFENDANT CESTONE** had the authority to hire, fire, or affect the terms and conditions of PLAINTIFF'S employment, or to otherwise influence the decision-maker of same. **DEFENDANT CESTONE** is being sued herein in her individual and official capacities.

25.     **DEFENDANTS, BCS and CESTONE**, are collectively referred to herein as "**BCS DEFENDANTS**."

**MATERIAL FACTS**

26.     On or about June 29, 2020, PLAINTIFF began working at **DEFENDANT BCS** as a "Customer Support Specialist" earning $23.07 per hour and working 40 hours per week.

27.     Therefore, PLAINTIFF had an expected 2022 annual income of $47,985.00, as well as the

value of any benefits she could have received while employed by DEFENDANTS, including but not limited to: dental insurance and 401k contributions.

28.    PLAINTIFF performed the duties of her employment in a satisfactory manner and was qualified for her position. PLAINTIFF was never subject to discipline as an employee of DEFENDANT BCS until after PLAINTIFF required reasonable accommodations and exercised her right to maternity leave.

29.    In or around May 2021, PLAINTIFF learned that she was pregnant and immediately informed DEFENDANTS about her pregnancy.

30.    PLAINTIFF learned that she had a high-risk pregnancy, which was more concerning, and informed DEFENDANTS of the same. This health issue put PLAINTIFF in higher risk of miscarriage, and she needed to have more doctor visits to assist PLAINTIFF to carry her baby to full-term.

31.    The high-risk nature of PLAINTIFF'S pregnancy qualified her pregnancy as a disability under the statutes alleged herein, as the high-risk nature of PLAINTIFF'S pregnancy affected one or more of PLAINTIFF'S life activities.

32.    PLAINTIFF sent multiple emails to DEFENDANT CESTONE about her ongoing medical visits, for which she needed time off. However, DEFENDANT CESTONE never responded to PLAINTIFF'S doctor's notes/notices.

33.    Specifically, PLAINTIFF supplied medical documentation to DEFENDANT CESTONE on 5/25/2021, 7/20/2021, 7/22/2021 and 8/6/2021 to keep DEFENDANTS informed of her medical appointments. In addition to emailing DEFENDANT CESTONE about her medical appointments, PLAINTIFF made inquiries to DEFENDANT CESTONE by email about her coming maternity leave needs.

34.    PLAINTIFF, after each such message sent to DEFENDANT CESTONE regarding her

medical issues, had to visit DEFENDANT CESTONE'S office to confirm receipt and ask for her response because DEFENDANT CESTONE would not acknowledge any of PLAINTIFF'S notices, emails or messages related to her medical or pregnancy needs.

35. DEFENDANTS chose to ignore PLAINTIFF'S inquiries and medical documentation in an effort to keep PLAINTIFF in the dark about reasonable accommodations and her coming maternity leave.

36. DEFENDANTS, particularly DEFENDANT CESTONE, intended to cause PLAINTIFF anxiety and fear for her employment by routinely ignoring PLAINTIFF'S concerns.

37. DEFENDANT CESTONE'S conduct was calculated to dissuade PLAINTIFF and others from pregnancy and/or from seeking medical accommodations at DEFENDANT BCS due to pregnancy.

38. DEFENDANT BCS did not properly (if at all) train, instruct or supervise DEFENDANT CESTONE in pregnancy discrimination, reasonable accommodations, maternity leave laws, caretaker issues, or retaliation.

39. As a direct result of DEFENDANT BCS' failure to train, supervise or instruct its managers/supervisors of the laws, PLAINTIFF was subjected to the unlawful conduct alleged herein.

40. PLAINTIFF noticed that DEFENDANT CESTONE would get visibly annoyed and respond curtly with an attitude toward PLAINTIFF whenever PLAINTIFF raised any issue about her medical situations or pregnancy issues.

41. DEFENDANT CESTONE'S conduct made PLAINTIFF fear for her job and made PLAINTIFF feel helpless and insecure.

42. Upon information and belief, DEFENDANT BCS had no pregnancy or maternity leave policy in place at the time relevant to this Complaint.

43.    If DEFENDANT BCS did have a pregnancy or maternity leave policy in place, DEFENDANT BCS did not take same seriously and did not afford PLAINTIFF any benefit or instructions under same to prepare for her coming childbirth.

44.    DEFENDANTS, particularly DEFENDANT CESTONE, was annoyed about PLAINTIFF'S pregnancy and her need for maternity leave and accommodations and DEFENDANT CESTONE made her annoyance with PLAINTIFF obvious.

45.    DEFENDANTS' lack of responses, concern or care for PLAINTIFF caused PLAINTIFF anxiety and undue stress because PLAINTIFF received no support or guidance from DEFENDANTS pursuant to a policy (if any) and PLAINTIFF continued to work blindly with her medical and pregnancy concern for months.

46.    PLAINTIFF, under the circumstances, worked diligently everyday up until the day of her delivery despite it being a high-risk pregnancy because PLAINTIFF sensed that DEFENDANTS were not pleased with her pregnancy.

47.    PLAINTIFF'S baby was born prematurely on or about September 21, 2021. Thereafter, after the birth of her pre-mature child, PLAINTIFF went on a maternity leave on or about September 21, 2021.

48.    PLAINTIFF returned to work from maternity leave on or about December 20, 2021.

49.    Approximately two weeks after her return, January 2, 2022, PLAINTIFF'S mother, who babysat PLAINTIFF'S newborn, became sick and could not take care of the child at this time. As a result, PLAINTIFF had to request a day off as a result of her caretaker responsibilities.

50.    The next day, PLAINTIFF learned about the death of her uncle.

51.    PLAINTIFF contacted DEFENDANT CESTONE and requested another day off for bereavement and to arrange for alternate childcare for her baby.

52.    PLAINTIFF further informed DEFENDANT CESTONE that she was ready and willing to work from home and would do whatever it took to be productive from home.

53.    DEFENDANT CESTONE was noticeably annoyed at PLAINTIFF; responded rudely to PLAINTIFF; advised PLAINTIFF that she wanted to think about PLAINTIFF'S requests and would call PLAINTIFF back. DEFENDANT CESTONE then abruptly ended the call with PLAINTIFF.

54.    Approximately 30 minutes later, PLAINTIFF received a call from DEFENDANT CESTONE informing PLAINTIFF that she was being terminated due to her absences and/or because she *"**took too much time off from work**."*

55.    By terminating PLAINTIFF for alleged "***absences***," DEFENDANT CESTONE was referring to PLAINTIFF'S prior maternity leave and accommodations due to her pregnancy.

56.    PLAINTIFF asked for specifics about what "time off" PLAINTIFF "took" that was the basis for the decision to terminate PLAINTIFF.

57.    DEFENDANT CESTONE specified that PLAINTIFF recently took too much time off and also mentioned that PLAINTIFF took a few days to get married and/or for her wedding.

58.    Upon information and belief, DEFENDANT CESTONE was referring to PLAINTIFF'S 12 weeks' of maternity leave, when she (DEFENDANT CESTONE) was referring to "too much time off."

59.    In addition, PLAINTIFF'S request for days off to get married was known to DEFENDANTS well in advance of the date(s) requested and was approved.

60.    PLAINTIFF utilized her own personal days (to which she was entitled under BCS' policies) for her wedding and did not require any additional time.

61.    PLAINTIFF was being penalized and terminated for her pregnancy, for engaging in

protected activity, and for seeking reasonable accommodations.

62. But for PLAINTIFF'S pregnancy and prior use of 12 weeks for maternity leave, DEFENDANTS would not have referenced her use of time off as a reason for termination and PLAINTIFF would not have been terminated.

63. DEFENDANTS' termination of PLAINTIFF was motivated, in whole or in part, on PLAINTIFF exercising her rights to maternity leave and for seeking a reasonable accommodation.

64. DEFENDANT BCS did not properly (if at all) train, instruct or supervise DEFENDANT CESTONE in pregnancy discrimination, reasonable accommodations, maternity leave laws, caretaker issues or retaliation.

65. As a direct result of DEFENDANT BCS' failure to train, supervise or instruct its managers/supervisors of the laws, PLAINTIFF was subjected to the unlawful conduct alleged herein.

66. PLAINTIFF was shocked and PLAINTIFF'S husband, who was close by listening to the conversation between PLAINTIFF and DEFENDANT CESTONE in the background, immediately remarked *"this is retaliation!"*

67. In response, DEFENDANT CESTONE quickly hung up the phone on PLAINTIFF.

68. Within an hour of the call with PLAINTIFF, PLAINTIFF received a termination letter from the DEFENDANTS stating therein that PLAINTIFF was being terminated because DEFENDANTS were (allegedly) *"moving in a different direction"* and for *"financial reasons."*

69. Indeed, the termination letter made no mention of *"absences"* or *"taking too much time off,"* which were THE ACTUAL REASONS stated by DEFENDANT CESTONE during her termination phone call with PLAINTIFF.

70.    This written excuse was different from DEFENDANT CESTONE'S (alleged) *"terminated for absences"* verbal excuse offered to PLAINTIFF an hour earlier.

71.    DEFENDANTS' email stating that PLAINTIFF was being terminated was merely pretext for covering the actual discriminatory and retaliatory firing of PLAINTIFF due to her pregnancy, use of pregnancy leaves and requests for reasonable accommodations.

72.    DEFENDANTS' changing of their excuses for termination and alleging multiple reasons to PLAINTIFF, at different times, is proof that DEFENDANTS' excuses were pretextual and DEFENDANTS were searching for a reason to justify PLAINTIFF'S wrongful termination – after the fact.

73.    At all times, DEFENDANTS knew that their termination of PLAINTIFF was unfair, unlawful and unreasonable.

74.    DEFENDANTS, aware that PLAINTIFF gave birth to a premature baby, which required special care/attention, and aware that PLAINTIFF had childcare/caretaker issues, refused to afford PLAINTIFF a reasonable accommodation to allow her to work from home for the day.

75.    PLAINTIFF tried to work with the DEFENDANTS and to avoid any hardships to DEFENDANTS while being able to take care of her newborn.

76.    DEFENDANTS would have faced no hardship by allowing PLAINTIFF to work from home as she was a customer service specialist and could have fielded the customer calls from her home.

77.    DEFENDANTS prevented PLAINTIFF from working from home and then terminated her blocking her income at a time where PLAINTIFF needed finances to look after herself and her child, which caused PLAINTIFF damages/injuries, loss of pay, distress, etc.

78.    DEFENDANTS did not engage in an interactive process or cooperative dialogue with

PLAINTIFF at a time that DEFENDANTS were aware that PLAINTIFF needed and an accommodation.

79. Allowing PLAINTIFF to work from home for a day would not have created any undue hardship on DEFENDANTS, as PLAINTIFF did not require a long-term accommodation.

80. DEFENDANTS wrongfully terminated PLAINTIFF due to her prior maternity/childcare leave.

81. DEFENDANTS intended to remove PLAINTIFF from employment because she was a mother of a newborn, and they did not want to deal with her resultant reasonable accommodation requests or even engage in an interactive process or cooperative dialogue as required by the law.

82. DEFENDANTS also wrongfully terminated PLAINTIFF due to her childcare responsibility status and need for a reasonable accommodation due to her childcare issues.

83. DEFENDANTS did not believe that they had to follow the law concerning pregnancy and maternity/medical leaves in the workplace.

84. At all times, DEFENDANT CESTONE was acting pursuant to her authority as a supervisor/manager, agent, and/or representative of DEFENDANT BCS.

85. But for her management position of authority within DEFENDANT BCS, DEFENDANT CESTONE, would not have been able to subject PLAINTIFF to the discriminatory/retaliatory treatment alleged herein.

86. As a result of DEFENDANTS' discriminatory/retaliatory treatment of PLAINTIFF, she suffers severe physical, mental and emotional distress.

87. DEFENDANTS callously removed PLAINTIFF from her employment at the worst possible time – when PLAINTIFF needed her income (especially during a pandemic) to support her newborn child and family.

88.   PLAINTIFF was unlawfully terminated in violation of her rights.

89.   PLAINTIFF suffered mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment opportunities, unemployment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, depression, anxiety, special damages, and ongoing emotional distress.

90.   DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

91.   As such, PLAINTIFF demands Punitive Damages as against all DEFENDANTS, jointly and severally.

**FIRST CAUSE OF ACTION**
**FOR *DISCRIMINATION* UNDER TITLE VII**
*(Against Employer DEFENDANT BCS)*

92.   PLAINTIFF repeats, reiterates and realleges the foregoing allegations made in the above paragraphs of this Complaint as if more fully set forth herein at length.

93.   The Pregnancy Discrimination Act of Title VII prohibits discrimination in the terms and conditions of employment and the discharge of an employee based on the employee's pregnancy. 42 U.S.C. §§2000e-2(a)(1), 2000e(k).

94.   DEFENDANT BCS engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against PLAINTIFF because of her pregnancy, maternity needs, disability (actual or perceived), sex/gender and caretaker status as set forth above.

95.   DEFENDANT BCS was aware that PLAINTIFF had a prematurely born newborn, caretaker issues, previously exercised maternity leave and would most-likely have future accommodations needs due to her circumstances.

96.   DEFENDANT BCS accommodated PLAINTIFF initially when she took time off for

maternity leave.

97.    But, when PLAINTIFF returned to work and later needed a day or two for caretaker concerns/issues, DEFENDANT BCS failed to accommodate PLAINTIFF'S reasonable request or engage in an interactive process and/or cooperative dialogue.

98.    DEFENDANT BCS discriminated against the PLAINTIFF on account of her sex/gender and status as a new mother, who had caretaker issues and required a reasonable accommodation.

99.    Instead of engaging in an interactive process or meaningful dialogue with PLAINTIFF, DEFENDANT BCS wrongfully terminated her employment.

100.   DEFENDANT BCS had no good faith business justification for any of the actions taken against PLAINTIFF.

101.   DEFENDANT BCS did not properly (if at all) train, instruct or supervise DEFENDANT CESTONE in pregnancy discrimination, reasonable accommodations, maternity leave laws, caretaker issues or retaliation.

102.   As a direct result of DEFENDANT BCS' failure to train, supervise or instruct its managers/supervisors of the laws, PLAINTIFF was subjected to the unlawful conduct alleged herein.

103.   DEFENDANT CESTONE was acting on behalf of her employer, DEFENDANT BCS.

104.   At all times, DEFENDANT CESTONE was acting pursuant to her authority as a manager/supervisor, agent, and representative of DEFENDANT BCS.

105.   But for her position of authority within DEFENDANT BCS, DEFENDANT CESTONE, would not have been able to subject PLAINTIFF to the discriminatory/retaliatory treatment alleged herein.

106.   DEFENDANT BCS is strictly liable for the conduct of its managers and supervisors against

PLAINTIFF.

107.   As a result of DEFENDANT'S discriminatory treatment of PLAINTIFF, PLAINTIFF suffered severe emotional distress.

108.   PLAINTIFF was unlawfully humiliated, degraded, belittled, and suffered a violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, etc.

109.   PLAINTIFF also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

110.   DEFENDANT BCS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

111.   PLAINTIFF is entitled to the maximum damages allowed under this statute.

**SECOND CAUSE OF ACTION**
***RETALIATION* UNDER TITLE VII**
***(Against Employer DEFENDANT BCS)***

112.   PLAINTIFF repeats, reiterates, and realleges the foregoing allegations made in the above paragraphs of this Complaint.

113.   Title VII, at 42 U.S.C. § 2000e-3(a), provides that it shall be unlawful employment practice for an employer:

> (1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

114.   DEFENDANTS violated the sections cited herein as set forth.

115.   PLAINTIFF informed DEFENDANTS of her "high risk" pregnancy.

116.   PLAINTIFF engaged in protected activity by informing DEFENDANT BCS of her

pregnancy, putting them on notice she would require leave for her pregnancy-related illness.

117.   DEFENDANTS treated PLAINTIFF like she was a nuisance, failed/refused to properly advise her of any maternity leave policies in place, refused to address her accommodations inquiries, treated PLAINTIFF dismissively and harshly in response to her medical notes and requests, then terminated PLAINTIFF for utilizing maternity leave as an employee of BCS and for needing a reasonable accommodation.

118.   DEFENDANT BCS did, with reservation, allow PLAINTIFF to take her maternity leave, then unfairly terminated PLAINTIFF for doing so.

119.   While firing PLAINTIFF, DEFENDANT CESTONE, acting on behalf of DEFENDANT BCS, informed PLAINTIFF that she was being terminated due to her absences, i.e., the absences PLAINTIFF took for maternity leave.

120.   DEFENDANT BCS acting through DEFENDANT CESTONE retaliated against PLAINTIFF on account of PLAINTIFF engaging in a protected activity, i.e., requesting/ taking maternity leave, for needing reasonable accommodations and due to her caretaker status.

121.   DEFENDANTS had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

122.   DEFENDANT BCS did not properly (if at all) train, instruct or supervise DEFENDANT CESTONE in pregnancy discrimination, reasonable accommodations, maternity leave laws, caretaker issues or retaliation.

123.   As a direct result of DEFENDANT BCS' failure to train, supervise or instruct its managers/supervisors of the laws, PLAINTIFF was subjected to the unlawful conduct alleged herein.

124.   As a result of DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

125.   PLAINTIFF was unlawfully humiliated, suffered a violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, etc.

126.   PLAINTIFF has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, physical injuries, and other non-pecuniary losses.

127.   DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

128.   PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

### THIRD CAUSE OF ACTION FOR *DISCRIMINATION* UNDER THE NEW YORK STATE EXECUTIVE LAW *(Against Employer DEFENDANT BCS)*

129.   PLAINTIFF repeats, reiterates, and realleges foregoing allegations made in the above paragraphs of this complaint.

130.   New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's . . . sex . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment.

131.   DEFENDANT BCS violated the sections cited herein as set forth.

132.   DEFENDANT BCS discriminated against PLAINTIFF based on her sex/gender/pregnancy/caretaker status by terminating her employment for pretextual reasons.

133.   DEFENDANT BCS was aware that PLAINTIFF had a prematurely born newborn,

caretaker issues, previously exercised maternity leave and would most-likely have future accommodations needs due to her circumstances.

134.  DEFENDANT BCS accommodated PLAINTIFF initially when she took time off for maternity leave.

135.  But, when PLAINTIFF returned to work and later needed a day or two for caretaker concerns/issues, DEFENDANT BCS failed to accommodate PLAINTIFF'S reasonable request or engage in an interactive process and/or cooperative dialogue.

136.  DEFENDANT BCS discriminated against the PLAINTIFF on account of her sex/gender and status as a new mother, who had caretaker issues and required a reasonable accommodation.

137.  Instead of engaging in an interactive process or meaningful dialogue with PLAINTIFF, DEFENDANT BCS wrongfully terminated her employment.

138.  DEFENDANT BCS had no good faith business justification for any of the actions taken against PLAINTIFF.

139.  DEFENDANT CESTONE was acting on behalf of her employer, DEFENDANT BCS.

140.  At all times, DEFENDANT CESTONE was acting pursuant to her authority as a manager/supervisor, agent, and representative of DEFENDANT BCS.

141.  But for her position of authority within DEFENDANT BCS, DEFENDANT CESTONE, would not have been able to subject PLAINTIFF to the discriminatory/retaliatory treatment alleged herein.

142.  DEFENDANT BCS did not properly (if at all) train, instruct or supervise DEFENDANT CESTONE in pregnancy discrimination, reasonable accommodations, maternity leave laws, caretaker issues or retaliation.

143.  As a direct result of DEFENDANT BCS' failure to train, supervise or instruct its

managers/supervisors of the laws, PLAINTIFF was subjected to the unlawful conduct alleged herein.

144. DEFENDANT BCS is strictly liable for the conduct of its managers and supervisors against PLAINTIFF.

145. As a result of DEFENDANT'S discriminatory treatment of PLAINTIFF, PLAINTIFF suffered severe emotional distress.

146. PLAINTIFF was unlawfully humiliated, degraded, belittled, and suffered a violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, etc.

147. PLAINTIFF also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

148. DEFENDANT BCS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

149. PLAINTIFF is entitled to the maximum damages allowed under this statute.

**FOURTH CAUSE OF ACTION FOR *RETALIATION*
UNDER THE NEW YORK STATE EXECUTIVE LAW**

150. PLAINTIFF repeats, reiterates, and realleges the foregoing allegations made in the above paragraphs of this complaint.

151. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because she has opposed any practices forbidden under this article."

152. DEFENDANTS violated the sections cited herein as set forth.

153. PLAINTIFF informed DEFENDANTS of her "high risk" pregnancy.

154.   PLAINTIFF engaged in protected activity by informing DEFENDANT BCS of her pregnancy, putting them on notice she would require leave for her pregnancy-related illness.

155.   DEFENDANTS treated PLAINTIFF like she was a nuisance, failed/refused to properly advise her of any maternity leave policies in place, refused to address her accommodations inquiries, treated PLAINTIFF dismissively and harshly in response to her medical notes and requests, then terminated PLAINTIFF for utilizing maternity leave as an employee of BCS and for needing a reasonable accommodation.

156.   DEFENDANT BCS did, with reservation, allow PLAINTIFF to take her maternity leave, then unfairly terminated PLAINTIFF for doing so.

157.   While firing PLAINTIFF, DEFENDANT CESTONE, acting on behalf of DEFENDANT BCS, informed PLAINTIFF that she was being terminated due to her absences, i.e., the absences PLAINTIFF took for maternity leave.

158.   DEFENDANT BCS acting through DEFENDANT CESTONE retaliated against PLAINTIFF on account of PLAINTIFF engaging in a protected activity, i.e., requesting/ taking maternity leave, for needing reasonable accommodations and due to her caretaker status.

159.   DEFENDANTS had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

160.   DEFENDANT BCS did not properly (if at all) train, instruct or supervise DEFENDANT CESTONE in pregnancy discrimination, reasonable accommodations, maternity leave laws, caretaker issues or retaliation.

161.   As a direct result of DEFENDANT BCS' failure to train, supervise or instruct its managers/supervisors of the laws, PLAINTIFF was subjected to the unlawful conduct

alleged herein.

162.   As a result of DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

163.   PLAINTIFF was unlawfully humiliated, suffered a violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, etc.

164.   PLAINTIFF has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, physical injuries, and other non-pecuniary losses.

165.   DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

166.   PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

### FIFTH CAUSE OF ACTION FOR *DISCRIMINATION/RETALIATION* UNDER THE NEW YORK STATE EXECUTIVE LAW *(Individual Liability Against INDIVIDUAL DEFENDANT CESTONE)*

167.   PLAINTIFF repeats, reiterates, and realleges the foregoing allegations made in the above paragraphs of this Complaint.

168.   New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

169.   DEFENDANT CESTONE violated the section cited herein as set forth and was personally engaged in the discriminatory and retaliatory actions about which PLAINTIFF complains herein.

170.   DEFENDANTS CESTONE utilized her power, authorities, status, and position to subject PLAINTIFF to the wrongful treatment outlined in this Complaint.

171. But for DEFENDANT CESTONE'S position with/at DEFENDANT BCS, DEFENDANTS CESTONE would not have been able or authorized to take and continue their discriminatory and retaliatory campaign against PLAINTIFF.

172. At all times relevant to the Complaint, while employed at DEFENDANT BCS, PLAINTIFF was continuously subjected to discriminatory differential treatment, wrongful termination, and other discriminatory/retaliatory actions as alleged above (due to her gender/pregnancy).

173. DEFENDANT CESTONE is individually liable for aiding and abetting the discriminatory actions of her employer, DEFENDANT BCS.

174. DEFENDANT CESTONE had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

175. As a result of DEFENDANT CESTONE'S discriminatory treatment of PLAINTIFF, she has suffered severe emotional distress.

176. PLAINTIFF suffered a violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, and emotional distress.

177. PLAINTIFF has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

178. DEFENDANT'S conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

179. PLAINTIFF is entitled to the maximum damages allowed under this statute.

## JURY DEMAND

180. PLAINTIFF requests a jury trial on all issues to be tried.

**WHEREFORE**, PLAINTIFF respectfully requests a judgment against DEFENDANTS:

A.    Declaring that DEFENDANTS engaged in unlawful employment practices prohibited by Title VII; the ADA; and the NYSHRL, in that discriminated against PLAINTIFF based on her sex/gender, pregnancy, and retaliated against PLAINTIFF for engaging in protected activity.

B.    Awarding damages to PLAINTIFF for all losses resulting from DEFENDANTS' unlawful discrimination and conduct and to otherwise make PLAINTIFF whole for any losses suffered because of such unlawful employment practices;

C.    restoring PLAINTIFF to her position as authorized by Title VII.

D.    Awarding PLAINTIFF compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to PLAINTIFF'S reputation in an amount to be proven;

E.    Awarding PLAINTIFF punitive damages;

F.    Awarding PLAINTIFF attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G.    Awarding PLAINTIFF such other and further relief as the Court may deem equitable, just, and proper to remedy DEFENDANTS' unlawful employment practices.

Dated: New York, New York
        June 5, 2023

                                    **PHILLIPS & ASSOCIATES,**
                                    **Attorneys at Law, PLLC**

                                    _____
                                    Gregory Calliste, Jr., Esq.
                                    Alexandria Jean-Pierre, Esq.
                                    *Attorneys for Plaintiff*

45 Broadway, Suite 430
New York, New York 10006
T: (212) 248 - 7431
F: (212) 901 - 2107
gcalliste@tpglaws.com
Ajean-Pierre@tpglaws.com